[Civ. No. 44174. First Dist., Div. One. May 15, 1980.]

MAXINE BOUCHARD, Plaintiff and Respondent, v.
VIRGINIA INSONA, Defendant and Appellant.

**COUNSEL**

Alfred A. Perez for Defendant and Appellant.

Charles F. Edgemon and Priest & Edgemon for Plaintiff and Respondent.

**OPINION**

AVAKIAN, J.*—Appellant Virginia Insona appeals from an order denying a motion made by herself and her husband, Anthony Insona (Anthony), to vacate a default and set aside a default judgment entered against them on October 18, 1977.

*Assigned by the Chairperson of the Judicial Council.

■ Appellant contends (1) that the order was void because the judge making it was properly disqualified under Code of Civil Procedure section 170.6, and (2) that the refusal to set aside the default was an abuse of discretion. Because we agree with appellant's first contention, there is no need to consider the second.

The record in this case is incomplete in various significant respects, but the necessary facts not shown in the record are either accepted as true by both parties in their briefs or are conceded by the party against whom they militate.

Respondent's first amended complaint alleges, in substance, that she had been fraudulently induced by Anthony, a contractor, to convey to him the title to her residential property in Los Gatos, California, on March 11, 1977, as a means of enabling him to obtain financing for her to pay Anthony for remodeling and reconstruction of her home and the building of a second house on her property; that as a part of the arrangement she advanced him the sum of $4,389.38 and signed a contract obligating her to pay him another $16,615.62; that despite assurance that he would hold title to the property "in trust" for respondent, he secretly executed a quitclaim deed to appellant on March 15, 1977; that he did not properly perform the work he had agreed to do; and that appellant had removed certain valuable items of antique furniture from the premises under the guise of restoring them. Respondent sought appropriate relief, including the return of her property, compensatory damages and punitive damages.

Anthony was personally served with summons on July 15, 1977, and substituted service was made on appellant. Default against both was entered on August 26, 1977, and on October 18, 1977, a default judgment was entered substantially in accord with the prayer of the complaint, with punitive damages fixed at $50,000.

■ On December 30, 1977, appellant and her husband served and filed a notice that on January 23, 1978, in the law and motion department of the Santa Clara Superior Court, they would move to vacate the default and set aside the default judgment, on the grounds of mistake, inadvertence, or excusable neglect "in that the defendants mistakenly believed that they had additional time in which to answer...."

On January 20, 1978, appellant's counsel filed what was described as a "motion for peremptory disqualification"[1] under Code of Civil Procedure section 170.6 of the judge regularly assigned to the law and motion calendar. The motion was orally renewed when the matter was called on January 23, and was denied by the judge on the ground that it was untimely.

Code of Civil Procedure section 170.6 provides that "where the judge,...who is scheduled to...hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date." It appears from the briefs that Santa Clara County has a law and motion department in which motions to vacate defaults are normally heard, and that occasionally matters are assigned out to other departments after being called in the law and motion department.

Thus, the question presented is whether the scheduling of a matter in a law and motion department imparts knowledge of the judge who will hear the matter, thereby triggering the 10-day/5-day rule of section 170.6.

Appellant argues that since the judge who will actually hear the matter is not known until the calendar is called, the 10-day/5-day rule has no application, and a motion to disqualify is timely until the hearing actually commences. Respondent states that the challenged judge had been assigned to the law and motion department in November 1977, and had been hearing "most of the civil law and motion matters" continuously from then until January 23, 1978, that it was common knowledge "that in all probability the law and motion judge would hear regular motion matters unless other arrangements were made in advance," and that appellant's counsel therefore knew "at least ten days

---

[1]Because the section 170.6 affidavit alleging bias or prejudice is not contestable, the disqualification is automatic and is often referred to erroneously as "peremptory." The predecessor statute allowed a "peremptory challenge" of a judge and was held unconstitutional for that very reason. (*Austin* v. *Lambert* (1938) 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849].) In upholding section 170.6 in its present form, the Supreme Court pointed out that the requirement of alleging prejudice under oath distinguished it from *Austin* v. *Lambert, supra,* and that the obligation to "show good faith by declaring under oath that the judge is prejudiced" limits the risk of using the challenge for improper purposes. (*Johnson* v. *Superior Court* (1958) 50 Cal.2d 693, 697-698 [329 P.2d 5]; see also *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 200 [137 Cal.Rptr. 460, 561 P.2d 1148]; and *McCartney* v. *Commission on Judicial Qualifications* (1974) 12 Cal.3d 512, 538, fn. 13 [116 Cal.Rptr. 260, 526 P.2d 268].)

before the scheduled date which judge would be presiding at the hearing."

It is apparent, however, that the matter had been assigned to a department, not to a judge, and even in respondent's argument the identity of the judge is referred to as a matter of probability rather than certainty. The statute lays down the 10-day/5-day rule in reference to the *judge* being known. Decisions involving advance assignments for trial make it clear that the 10-day/5-day rule does not apply if the assignment is merely to a department.

"... [T]he statutory provision is designed to afford a reasonable opportunity to disqualify a *known* trial judge; when an assignment is made to a trial *department* well in advance of the parties' readiness for trial, a change of judge in that department or continuance of trial due to compelling circumstances is not uncommon." (*People* v. *Hall* (1978) 86 Cal.App.3d 753, 758 [150 Cal.Rptr. 412], fn. omitted, italics the court's.) It was held in *Hall* that where a case is assigned to a particular department for trial more than 10 days in the future, and the trial is thereafter continued to successively different trial dates in the same department, the 10-day/5-day rule does not limit the challenge to 5 days before the first scheduled trial date.

*In re Jose S.* (1978) 78 Cal.App.3d 619 [144 Cal.Rptr. 309] involved a similar situation, perhaps even more closely related to the instant case. Department one of a three-judge court was designated as the juvenile department, and a particular judge usually presided. The jurisdictional hearing in *Jose S.* was set and reset on various dates between June 9 and September 15, 1976. Another judge happened to be sitting in that department on some of those dates. The challenge to the regularly assigned judge was made on August 31, apparently on the assumption that he would be presiding on September 15. The challenge was denied, for reasons not shown by the record. In holding the challenge timely, and rejecting the Attorney General's argument that the 10-day/5-day rule terminated the right to challenge 5 days before the originally set hearing date, the court said: "There is an uncertainty necessarily inherent in the practice of assigning a cause to a particular department but not to a named judge. The all too common continuance adds unknown variables. A consequent and undue hardship on the litigant flows which negates the underlying thrust of Code of Civil Procedure section 170.6—to grant to the litigant a single reasonable opportunity to disqualify a *known* trial judge." (*Id.*, at p. 627, italics the court's.)

See also *Eagle Maintenance & Supply Co. v. Superior Court* (1961) 196 Cal.App.2d 692, 694-695 [16 Cal.Rptr. 745], where the court, in reaching the same result as that in *People v. Hall, supra*, 86 Cal. App.3d 753 and *In re Jose S., supra*, 78 Cal.App.3d 619, made the following observation: "It is to be noted further that the cause of action herein was assigned to a particular department of the superior court, not to a specific judge. There are, as of this date, 120 departments of respondent court and we think it is a matter of common knowledge among lawyers that there are many transfers of judges from one department to another throughout the year, due among other things to the absence of judges for normal sick leave and vacation periods." (*Id.*, at pp. 694-695.)

*Woodman v. Selvage* (1968) 263 Cal.App.2d 390, 395 [69 Cal.Rptr. 687] involved a noticed motion on the law and motion calendar which the parties had agreed in advance would be deferred to a date to be selected in consultation with the judge when the calendar was called. In holding that the noticed date was not too late for challenging the judge regularly assigned to the law and motion department, the court, after quoting the language of *Eagle Maintenance* set out above, observed that "... there was a distinct possibility that [the regularly assigned judge]... would not be presiding over the matter at the subsequent date agreed upon, either because of his absence from the court or because the matter might be transferred to another. department."[2] (*Id.*, at p. 395.)

Similarly, in *Spector v. Superior Court* (1961) 55 Cal.2d 839, 843 [13 Cal.Rptr. 189, 361 P.2d 909], the court observed that the fact that a matter is noticed on the law and motion calendar does not provide knowledge of what judge will hear the matter.[3] (*Spector* did not involve the 10-day/5-day rule, because the motion was noticed only 7 days before the hearing date.)

[2]The alternate ground of the holding in *Woodman v. Selvage, supra*, 263 Cal.App.2d 390, namely, that a notice of motion is not a motion, and that the matter was not before the court until the motion was actually made on the call of the calendar, cannot be given effect, because Code of Civil Procedure section 1005.5, enacted in 1953, states that the motion "is deemed to have been made and to be pending before the court for all purposes, upon the due service and filing of the notice of motion,...."

[3]In *Sambrano v. Superior Court* (1973) 31 Cal.App.3d 416, 418 [107 Cal.Rptr. 274], the court assumed, without discussion, that assignment of a case upon filing to a particular department for all purposes, including trial, imparted knowledge of the identity of the trial judge. The court held that the challenge, made 8 days before trial, was timely under the 10-day/5-day rule. Similarly, in *Los Angeles County Dept. of Pub.*

These cases make it clear that, for Code of Civil Procedure section 170.6 purposes, assignment of a matter to a particular department is not the same as assigning it to a particular judge. Not only does this comport with the literal language of section 170.6; it also reflects the realities of what occurs in multijudge courts, in terms of reassigning matters on particular days in order to expedite the court's business, and in assigning other judges to specialty departments on days when the regularly assigned judge is absent or otherwise occupied. While a "last-minute" challenge of a judge in the law and motion department might create calendar problems, they are no different from the problems raised by the challenge of a trial judge when the master trial calendar is called. In all such situations, if the frequency of challenges creates practical problems, they can be alleviated considerably by the practice which exists in many counties of encouraging lawyers to advise in advance of the intention to challenge a particular judge, so that tentative arrangements can be made (whenever possible) for reassigning the matter if and when the challenge is actually made.

■ Since the challenge was timely, the court was without jurisdiction to hear the motion. (*Estate of Cuneo* (1963) 214 Cal.App.2d 381 [29 Cal.Rptr. 497].)

The order denying the motion to vacate is reversed, and the case is remanded for hearing of the motion by another judge.[4]

Newsom, Acting P. J., and Grodin, J., concurred.

---

*Social Services v. Superior Court* (1977) 69 Cal.App.3d 407, 414 [138 Cal.Rptr. 43], in holding that a challenge to a juvenile court referee was timely, the court made the incidental observation, without discussion, that a prior assignment of the case to a particular department for hearing at a later date was an assignment to the judge who normally sat in that department, for purposes of the 10-day/5-day rule. Neither of these cases involved the question of whether advance assignment to a department for future trial or hearing constitutes assignment to the specific judge who normally sits in that department, as distinguished from the judge who is actually there on the appointed day.

[4]Counsel agree that appellant has reconveyed the real property to respondent and returned the furniture which was in her possession. Apparently, only the question of damages remains in issue.