[No. B031754. Second Dist., Div. Two. Mar. 1, 1988.]

THOMAS REALTY CO., INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
MERRILL LYNCH REALTY, Real Party in Interest.

**COUNSEL**

Richards, Watson & Gershon, Mitchell E. Abbott and William B. Rudell for Petitioner.

No appearance for Respondent.

Dennis, Juarez, Shafer & Young, Ernest Allen Wish, Stuart I. Koenig and Kevin M. Brew for Real Party in Interest.

**OPINION**

**THE COURT.**\*—Petitioner seeks a peremptory writ of mandate compelling the superior court to honor its challenge filed pursuant to Code of Civil Procedure section 170.6. The trial court struck the challenge as untimely.[1]

The issue presented is a recurring one. Section 170.6, subdivision (2), provides in part that when the parties know the identity of the judge or commissioner "assigned to or who is scheduled to" hear a matter at least 10 days before the date set for hearing, a challenge is untimely unless made at least 5 days before the hearing.[2] When a party files a motion and calendars it for hearing in a specified department of the superior court, is the judge's identity "known" for purposes of that provision?

---

\*Before Roth, P. J., Gates, J., and Fukuto, J.

[1] We summarily denied the petition on December 22, 1987. The Supreme Court granted review on February 4, 1988, and directed us to issue an alternative writ. We complied.

[2] The pertinent sentence reads, in its entirety: "Where the judge, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date."

In striking the challenge in the instant case, the trial court was following the holding of *People* v. *Roerman* (1961) 189 Cal.App.2d 150, 164-165 [10 Cal.Rptr. 870]. There a challenge filed on the day of trial of a case assigned more than 10 days earlier to trial in a designated department was held untimely; the court explicitly rejected the contention that assignment to a particular department does not constitute an assignment to a judge.[3] Numerous other cases, spanning nearly the entire lifetime of section 170.6, have stated, in dictum, that the five-day rule applies in comparable circumstances.[4] (*Eagle Maintenance & Supply Co.* v. *Superior Court* (1961) 196 Cal.App.2d 692, 695 [16 Cal.Rptr. 745]; *Sambrano* v. *Superior Court* (1973) 31 Cal.App.3d 416, 419 [107 Cal.Rptr. 274]; *People* v. *Escobedo* (1973) 35 Cal.App.3d 32, 37, 40 [110 Cal.Rptr. 550]; *Villarruel* v. *Superior Court* (1973) 35 Cal.App.3d 559 [110 Cal.Rptr. 861]; *Los Angeles County Dept. of Pub. Social Services* v. *Superior Court* (1977) 69 Cal.App.3d 407, 414 [138 Cal.Rptr. 43]; *In re Jose S.* (1978) 78 Cal.App.3d 619, 627 [144 Cal.Rptr. 309]; *People* v. *Hall* (1978) 86 Cal.App.3d 753, 758 [150 Cal.Rptr. 412]; *In re Robert P.* (1981) 121 Cal.App.3d 36, 40-42 [175 Cal.Rptr. 252]; *People* v. *Superior Court* (*Hall*) (1984) 160 Cal.App.3d 1081, 1086 [207 Cal.Rptr. 131]; *Landmark Holding Group, Inc.* v. *Superior Court* (1987) 193 Cal.App.3d 525, 529 [238 Cal.Rptr. 475] [review den.].)

Despite this extensive authority, however, and without mentioning *People* v. *Roerman, supra,* a pair of First District decisions have held that because a motion assigned to a department is not assigned to the judge who usually presides there, the challenge may be made as late as the commencement of the hearing. (*Bouchard* v. *Insona* (1980) 105 Cal.App.3d 768 [164 Cal.Rptr. 505]; *Retes* v. *Superior Court* (1981) 122 Cal.App.3d 799 [176 Cal.Rptr. 160] [hg. den.].) Both cases point out that judges do not sit every day in their regular departments and that hearings are sometimes reassigned to other departments on the hearing date.

*Bouchard* relied on five cases for the propositions that "Decisions involving advance assignments for trial make it clear that the 10-day/5-day rule does not apply if the assignment is merely to a department" and "it [is] clear that, for Code of Civil Procedure section 170.6 purposes, assignment of a matter to a particular department is not the same as assigning it to a particular judge." (105 Cal.App.3d at pp. 772, 774.) The five cited cases, however, did not in fact support *Bouchard.*

---

[3] The Legislature left this decision undisturbed when, in 1965, it added the final sentence of subdivision (2) to clarify a different question involving timeliness.

[4] Many of these cases turned on the issue whether a challenge filed more than five days before the hearing was untimely under one of the other time limitations found in section 170.6, subdivision (2). Others rejected the contention that when a hearing is continued, a challenge filed five days before the new hearing date is untimely.

Three of the five are among the group of cases cited earlier in this opinion. Each held that when a hearing is continued, a challenge need not have been filed five days before the original hearing date. As noted earlier, each opines, in dictum, that the challenge must be filed five days before the new hearing date.[5]

The fourth and fifth cases on which *Bouchard* relied are *Woodman v. Selvage* (1968) 263 Cal.App.2d 390 [69 Cal.Rptr. 687], and *Spector v. Superior Court* (1961) 55 Cal.2d 839 [13 Cal.Rptr. 189, 361 P.2d 909]. Neither decision supports the holding in *Bouchard*. *Woodman* held timely a challenge filed 28 days before a continued hearing date. *Spector* held timely a challenge made at the time of hearing, because the party filing the challenge could not have known before the hearing that the court would deny his request that his motion to modify an injunction be heard by the judge who had issued the injunction. (In addition—as *Bouchard* recognized—the five-day rule did not apply in *Spector* because the motion had been set for hearing less than ten days in advance.)

In fact, *Bouchard* was unprecedented; it was the first decision to hold that when a matter is calendared for hearing in a designated department over 10 days in advance, a party may delay making its challenge until the time of the hearing.

*Bouchard* also claimed to "comport with the literal language of section 170.6." In fact, though, the contrary interpretation is supported by the statutory terminology. The five-day rule comes into play if the parties have ten days' advance knowledge of the identity of the judge "assigned to *or who is scheduled to* try the cause or hear the matter" (italics added). When a matter is set for hearing in a specified department to which a particular judge is regularly assigned, the matter is not "assigned to" that judge, but it must be considered "scheduled" to be heard before that judge.[6] The statute says "assigned or scheduled," not just "assigned." Yet the *Bouchard* holding necessarily treats the words "or who is scheduled" as without significance, in violation of the elementary rule that a court should avoid

---

[5] *People v. Hall*: "a challenge made at least five days before a continued or postponed trial date is timely." (86 Cal.App.3d at p. 758.) *In re Jose S.*: "a disqualification motion filed five days before the postponed date is timely." (78 Cal.App.3d at p. 627.) *Eagle Maintenance & Supply Co. v. Superior Court*: "any such motion and affidavit to disqualify a trial judge under the provisions of section 170.6 are timely filed if presented at least five days before the last scheduled date for trial where the judge who is assigned to or scheduled to try the cause is known to the party or his attorney at least 10 days before such date." (196 Cal.App.2d at p. 695.)

[6] "Assigned" means appointed for a particular duty. "Scheduled" means placed in a timed plan for a procedure or project. (See Webster's New Twentieth Century Dict. (2d ed. 1962) pp. 112, 1619.)

construing a statute in a way that makes some of its words surplusage. (See, e.g., *People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].)[7]

*Retes, supra,* 122 Cal.App.3d 799, follows *Bouchard,* and relies on statistical evidence on the proportion of court days (75.4 percent) the regularly assigned judge did not preside in the law and motion department during the three month period when the particular motion was pending in the trial court. In doing so, *Retes* necessarily weakened *Bouchard,* by implying a rule that application of *Bouchard* turns on an examination of court statistics in each case.[8] If this means the trial courts should determine the timeliness of each section 170.6 challenge by gathering data from the court administrator's office, it is hard to imagine a more impractical rule.[9]

Accordingly, we hold that *People* v. *Roerman, supra,* 189 Cal.App.2d 150, is still good law. If a matter is scheduled for hearing in an identified department and the name of the judge assigned to that department is known at least 10 days before the hearing, that judge may be disqualified only by a challenge filed at least 5 days before the hearing. If on the hearing date a judge other than the previously assigned judge is presiding, a party which has not exhausted its one challenge may exercise it against that judge not later than the commencement of the hearing.

Such a decision seems preferable not only from precedent and statutory interpretation, but also from both a pragmatic and a theoretical viewpoint.

First, *Bouchard* and *Retes* would in effect eradicate the five-day rule for all pretrial motions except those few assigned in advance to a designated judge.

Secondly, *Bouchard* and *Retes* impose an unreasonable and wasteful burden on the judges of the superior court, by requiring study of the parties' moving and opposition papers by a judge whom one of the parties secretly intends to disqualify.

Thirdly, *Bouchard* and *Retes* make it difficult for the superior court to hear and decide a motion at the time scheduled because they permit last-minute disqualification of the one judge who is prepared to hear it.

---

[7] In *Bouchard* itself the challenge was filed three days in advance of the hearing, a fact that suggests the challenging party understood the motion was scheduled to be heard by the regularly assigned judge.

[8] Referring to the evidence adduced of actual reassignment of judges, *Retes* said, "We hold that the instant facts are clearly within the rule of *Bouchard.*" (122 Cal.App.3d at p. 806.)

[9] Indeed, *Kaiser Foundation Hospitals* v. *Superior Court* (1987) 190 Cal.App.3d 721 [235 Cal.Rptr. 630] held that *Bouchard* and *Retes* do not apply in any court employing a tentative ruling procedure.

Fourthly, as has often been said, the time limitations of section 170.6, subdivision (2), reflect a legislative accommodation of the conflicting needs of litigant and court. The former wishes to postpone his challenge until he is fully informed, and the latter needs time to make adjustments after a disqualification. Subdivision (2) appears designed to require that the litigant make his challenge as soon as possible after he knows with some reasonable certainty which judge will hear a case. (See, e.g., *Augustyn* v. *Superior Court* (1986) 186 Cal.App.3d 1221, 1227-1228 [231 Cal.Rptr. 298].) The *Bouchard* holding, rather than accommodate these interests, abandons the court's interest and capitulates to that of the litigant, by authorizing him, at the court's expense, to delay filing his challenge in hopes that a last-minute reassignment or illness may achieve the same result without necessitating use of the challenge. Our Supreme Court has remarked, apparently approvingly, that "the courts of this state have been vigilant to enforce the statutory restrictions on the number and timing of motions permitted." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 197 [137 Cal.Rptr. 460, 561 P.2d 1148].)

Finally, *Bouchard* and *Retes* give an unduly expansive construction of the section 170.6 challenge. The concept that litigants and attorneys, for a tactical advantage, may refuse to submit to the authority of a duly commissioned judge is a statutory evil not to be extended by judicial interpretation beyond the plain requirements of the statutory language. Several of the obvious abuses of the challenge were well catalogued by Justice Mosk in *Solberg* v. *Superior Court, supra,* 19 Cal.3d 182, 194-195.[10] An additional abuse is that recurrent challenges against a judge have become a method by which litigants have arrogated to themselves the power to veto departmental assignments made by the presiding judge.

The instant case perfectly illustrates why the challenge afforded by section 170.6 should not be given a broadened interpretation. The motion—a petition to confirm an arbitration award—was filed and served by real party on November 17, 1987. The notice of motion prominently showed it was set for hearing on December 18, 1987, in Department B of the North Central branch court in Burbank. If petitioner's counsel looked at the court directories published weekly in the local newspapers, he saw that two judges and one commissioner sit in the Burbank branch court; that Judge Murphy is one of the two judges; and that he sits in Department B. Petitioner decided it wished to take a deposition before the petition was heard, and on

---

[10]These include challenges because of the judge's views on the law; to procure delay or transfer to a different branch court; to avoid submitting a meritless case to an experienced judge; to intimidate judges; and, in some instances, to influence the outcome of a judicial election. (See also *Fraijo* v. *Superior Court* (1973) 34 Cal.App.3d 222, 226-230 [109 Cal.Rptr. 909] (conc. and dis. opn. of Compton, J.).)

December 16 it presented to Judge Murphy an ex parte request for a continuance of the December 18 hearing or an order shortening time to permit a discovery motion to be heard on two days' notice. Judge Murphy denied petitioner's request. The next day, petitioner filed its section 170.6 challenge to Judge Murphy. The inference is inescapable that the purpose of the challenge was to enable petitioner to appear at the hearing and seek from a different judge the continuance which Judge Murphy had denied.[11]

If petitioner wished to exercise its right to disqualify the judge assigned to a scheduled department, it should have filed its challenge at least five days before the hearing. The fact a litigant has only one round of ammunition is insufficient reason to permit him to hold his fire until, on the hearing date, he sees the whites of the judge's eyes; Burbank is not Bunker Hill. Petitioner implicitly conceded this fact, for when it filed its challenge one day in advance, it could still not be certain Judge Murphy would not be ill or reassigned on the day of the hearing.[12] As the Supreme Court has instructed more than once, "we cannot permit a device intended for spare and protective use to be converted into a weapon of offense and thereby to become an obstruction to efficient judicial administration." (*McClenny* v. *Superior Court* (1964) 60 Cal.2d 677, 689 [36 Cal.Rptr. 459, 388 P.2d 691]; *Solberg* v. *Superior Court, supra,* 19 Cal.3d 182, 198.) The challenge was not filed, as petitioner contends, a day earlier than required. It was four days late, and was therefore properly stricken.

The alternative writ is discharged, and the petition for a writ of mandate is denied.

Roth, P. J., Gates, J., and Fukuto, J., concurred.

Petitioner's application for review by the Supreme Court was denied May 26, 1988. Mosk, J., Broussard, J., and Kaufman, J., were of the opinion that the application should be granted.

---

[11] To petitioner's credit, it did not wait until the day of the hearing to present its challenge. Such a tactic could itself have forced the court to grant a continuance so another judge could study the moving and opposition papers.

[12] This fact supports the inference that the reason petitioner delayed the challenge was not that it wished to save its one challenge until it was positive the petition would be heard by Judge Murphy, but rather because it was dissatisfied with his unfavorable ruling on its ex parte request for a continuance, and hoped for a more favorable reception by a different judge.