[No. S022419. Apr. 1, 1993.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
YAHYA LAVI, Real Party in Interest.

## COUNSEL

Ira Reiner, District Attorney, Maurice H. Oppenheim, Robert W. Carney, Arnold T. Guminski, Donald J. Kaplan and Brentford J. Ferreira, Deputy District Attorneys, for Petitioner.

Wilbur F. Littlefield, Public Defender (Los Angeles), and John Hamilton Scott, Deputy Public Defender, as Amici Curiae on behalf of Petitioner.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

Gerald L. Chaleff and Audrey Winograde for Real Party in Interest.

**OPINION**

LUCAS. C. ██ This case concerns the appropriate time to file a motion to disqualify a judge pursuant to Code of Civil Procedure section 170.6 (all further statutory references are to this code unless otherwise indicated).[1] The primary issue may be stated as follows: When a master calendar department assigns a case to a "long cause" criminal trial department[2] for "trial setting," which, if any, of section 170.6, subdivision (2)'s timeliness requirements (the "master calendar" rule, the "all purpose assignment" rule, or the "10-day/5-day" rule) for making motions under that statute apply? We hold that because respondent court's master calendar department did not operate as a true master calendar, the master calendar rule did not apply. We also hold that petitioner's section 170.6 challenge was timely under either of the remaining rules.

## I. Facts

Real party in interest, Yahya Lavi, is charged with multiple sex offenses. Initially, his case was assigned to department 112 of the Los Angeles County Superior Court, where various pretrial motions were heard. On June 27, 1991, the case was transferred from department 112 to department 100, the criminal master calendar department, Judge Klausner presiding. On July 17, counsel for both sides appeared before Judge Klausner to have a trial date assigned, and both indicated that September 23 or 30, 1991, would be acceptable. Judge Klausner transferred the case to department 104, designated a "long cause" department, in which Judge Trammell presides.[3] Judge Klausner asked: "This is 20 [days] of 60 today,[4] is that correct?" After receiving an affirmative response and confirming that both parties were desirous of securing a trial date, the judge stated: "This matter will be transferred to Department 104 for tomorrow for *setting,* counsel. It will be 21 [days] of 60, and *you can arrange with the court down there the trial date.*"

---

[1]Motions to disqualify made pursuant to section 170.6 are usually referred to as "peremptory challenges." Unlike a true peremptory challenge, however, section 170.6 requires that the movant allege "prejudice" on the part of the challenged judge. (An allegation made in good faith is sufficient—prejudice need not be factually established.) (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 193 [137 Cal.Rptr. 460, 561 P.2d 1148].) In this opinion, we will refer to section 170.6 motions as "170.6 challenges" or "disqualification motions."

[2]According to the parties, the Los Angeles County Superior Court, Central District (hereafter, the Central District), has established seven "long cause" trial departments that hear, exclusively, lengthy trial matters assigned to them through the master calendar department.

[3]In his July 17 minute order, Judge Klausner noted that the assignment to department 104 was for "all purposes."

[4]Pursuant to Penal Code section 1382, a case must be dismissed on speedy trial grounds if not brought to trial within 60 days of the indictment or filing of the information.

(Italics added.) Rather than immediately challenging Judge Trammell, the People waited until later in the afternoon, after the conclusion of the hearing, to file their motion to disqualify him.

On July 18, 1991, Judge Trammell rejected the People's section 170.6 challenge. He ruled that because the case had already been transferred from the master calendar department at the time the challenge was made, it was untimely under section 170.6, subdivision (2)'s dictate that, "*If directed to the trial of a cause* where there is a *master calendar,* the [disqualification] motion shall be made to the judge supervising the master calendar *not later than the time the cause is assigned for trial.*" (Italics added.) On July 29, the People filed a petition for a writ of mandate in the Court of Appeal challenging Judge Trammell's ruling; the petition was summarily denied.

On August 12, 1991, the People filed a petition for review. On September 26, we granted the petition and transferred the matter to the Court of Appeal with directions to vacate its order denying the writ and to issue an alternative writ. On January 23, 1992, the Court of Appeal again denied the petition, holding that the master calendar rule (discussed *post*) rendered the section 170.6 challenge untimely. On January 31, 1992, the People filed a second petition for review, which we granted. As will appear, we conclude the People's motion under section 170.6 was timely, and that the Court of Appeal judgment should be reversed.

## II. *Discussion*

### A. *Overview*

As a general rule, a challenge of a judge is permitted under section 170.6 any time before the commencement of a trial or hearing. (*Shipp* v. *Superior Court* (1992) 5 Cal.App.4th 147, 150 [6 Cal.Rptr.2d 685]; *Los Angeles County Dept. of Public Social Services* v. *Superior Court* (1977) 69 Cal.App.3d 407, 412 [138 Cal.Rptr. 43].) If the general rule applies, petitioner's challenge is timely. Subdivision (2) of section 170.6, however, establishes three exceptions to the general rule, namely, the "10-day/5-day" rule, the "master calendar" rule, and the "all purpose assignment" rule.

Section 170.6, subdivision (2) states, in pertinent part: "Where the judge, other than a judge assigned to the case for all purposes, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date [hereafter, the 10-day/5-day rule]. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial [hereafter, the master calendar rule]. If directed to the trial of a cause which has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 10 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 10 days after the appearance [hereafter, the all purpose assignment rule]. . . . In no event shall any judge, court commissioner, or referee entertain the motion if it be made after the drawing of the name of the first juror, or if there be no jury, after the making of an opening statement by counsel for plaintiff, or if there is no such statement, then after swearing in the first witness or the giving of any evidence or after trial of the cause has otherwise commenced. . . . In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be."

Thus, for any given factual scenario, it must be determined whether any of section 170.6, subdivision (2)'s pertinent exceptions (the 10-day/5-day rule, the master calendar rule, or the all purpose assignment rule) are applicable, or whether the general rule (the commencement of trial rule) should apply. As will appear, we conclude that the master calendar rule was inapplicable here, and that the People's challenge was timely under any of the remaining rules. We first discuss the master calendar rule, and then address the all purpose assignment rule and the 10-day/5-day rule.

B. *The Master Calendar Rule*

The master calendar rule of section 170.6, subdivision (2) requires disqualification motions be filed "not later than the time the cause is assigned for trial" by a "master calendar." If that rule applied here, petitioner's challenge would be deemed untimely because it was made several hours after the initial assignment.

Petitioner contends that because the master calendar court assigned the case for trial setting, rather than for immediate trial, no assignment for trial by a judge supervising the "master calendar" occurred, and thus the master calendar rule should not apply. Respondent court argues the case was assigned for trial by a master calendar judge, and that Judge Trammell's identity was known with sufficient certainty to apply the master calendar rule.

The Court of Appeal agreed with respondent. It declined to construe the statutory phrase "assigned for trial" as containing an immediate trial requirement, as contended by petitioner, and it did not examine the nature of a true master calendar. Furthermore, relying on *Woodman* v. *Superior Court* (1987) 196 Cal.App.3d 407 [241 Cal.Rptr. 818] (*Woodman*), and *Augustyn* v. *Superior Court* (1986) 186 Cal.App.3d 1221 [231 Cal.Rptr. 298] (*Augustyn*), the court held that a section 170.6 challenge must be made as soon as the assigned judge's identity is known with reasonable certainty. The Court of Appeal ruled that, given the unique nature of respondent's "long cause" trial system, Judge Trammell's identity was known at the time Judge Klausner transferred the case to department 104. The court reasoned that the People should have made their challenge at that time, and that their failure to do so rendered their later motion untimely.[5]

---

[5]Respondent court also asserts that the Central District's seven "long cause" trial departments were established pursuant to the Trial Court Delay Reduction Act of 1986 (Gov. Code § 68600 et seq.; hereafter, Trial Delay Reduction Act), and contends that, because of this, we should give special deference to an apparent local policy requiring litigants to make immediate peremptory challenges when a master calendar court assigns a case to a long cause judge for trial. This alleged local policy appears simply to restate respondent's interpretation of section 170.6's master calendar rule—that a party must immediately file a section 170.6 challenge when a "master calendar department" assigns a case, even when the trial will not occur until the future.

Given our holding herein, that for section 170.6's master calendar rule to apply, a trial-ready case must be assigned to a trial-ready courtroom, respondent's local policy in effect would reduce the time within which the People or defendant may file a disqualification motion. We question the validity of such policy. (See Gov. Code, § 68070 [local rules may not conflict with law]; *Wells Fargo Bank* v. *Superior Court* (1988) 206 Cal.App.3d 918, 923 [254 Cal.Rptr. 68]; *Estate of Brown* (1987) 193 Cal.App.3d 1612, 1619 [239 Cal.Rptr. 147]; 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, §§ 154-155, pp. 181-183 [local policies, to be valid, must not conflict with statutory law].)

In any event, like the Court of Appeal herein, we decline to consider background evidence concerning the "long cause" departments because that evidence is based on declarations that were not presented to the trial court. (See *People* v. *Zamora* (1980) 28 Cal.3d 88, 96 [167 Cal.Rptr. 573, 615 P.2d 1361] ["Although we regret that we must thus decide the present

As we will explain, we find *Woodman, supra,* 196 Cal.App.3d 407, and *Augustyn, supra,* 186 Cal.App.3d 1221, inapplicable. Moreover, although there was sufficient assurance that Judge Trammell would sit in the assigned "long cause" department, department 104, the master calendar rule does not apply because here, the master calendar department was not managing a true master calendar by assigning ready cases to departments for trial.

At the initial hearing before Judge Klausner on July 17, 1991, the court stated: "This matter will be transferred to *Department 104* for tomorrow for setting, counsel." (Italics added.) As a preliminary matter, although Judge Klausner did not specifically name the judge who sat in department 104, the People have conceded knowledge that Judge Trammell was assigned to this department. Thus, it would not be unfair to invoke the master calendar rule if its requirements are met.[6]

Was the case assigned for trial by a judge supervising the "master calendar" within the meaning of the master calendar rule? We first note that the fact that Judge Klausner's department is labeled a "master calendar" court, although persuasive, is not conclusive. (See *Shipp* v. *Superior Court, supra,* 5 Cal.App.4th at p. 152.) A court may not subject every case assignment to the master calendar rule of section 170.6 simply by labeling the assigning court a "master calendar department." As was stated in *Villarruel* v. *Superior Court* (1973) 35 Cal.App.3d 559, 563-564 [110 Cal.Rptr. 861]: "It appears to be the theory of the respondent court that any case which

---

appeal upon a record less complete than that developed in later cases, . . . we should not take judicial notice of matters which should have been, but were not, presented to the trial court."]; *People* v. *Superior Court (Hartway)* (1977) 19 Cal.3d 338, 350, fn. 6 [138 Cal.Rptr. 66, 562 P.2d 1315]; *Reygoza* v. *Superior Court* (1991) 230 Cal.App.3d 514, 522, fn. 7 [281 Cal.Rptr. 390] [court disallowed what was apparently a declaration similar to the declaration respondents now urge us to consider because it was not contained in the record below]; *Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 436-437 [253 Cal.Rptr. 587]; 8 Witkin, Cal.Procedure (3d ed. 1985) Extraordinary Writs, § 188, p. 816 [it "is singularly inappropriate for appellate courts, which are not equipped to try issues of fact (to do so)"].)

[6]Moreover, under the facts of this case, petitioner clearly had constructive knowledge of Judge Trammell's identity. Judge Trammell described the Central District's "long cause" trial system at the hearing on petitioner's section 170.6 motion. He stated: "This is a trial court. I'm one of seven courts that are specially set up to try long cause matters. . . . I just try cases one after another as the other six courts are similarly situated. . . . This particular court and the other six courts are set—cases are transferred in for trial from a master calendar, in other words, a master calendar trying to even out caseloads as it sees fit." Petitioner knew the instant case was estimated to require a lengthy trial and would be heard in one of these seven "long cause" courts. As the main institutional participant in this "long cause" trial system, the People surely knew or should have known the identity of the presiding judge in each of these departments. Thus, even absent the People's concession, when Judge Klausner assigned the case to department 104, petitioner was charged with knowledge that this assignment was to Judge Trammell.

has been assigned by a master calendar department has been assigned from a 'master calendar.' That theory is irreconcilable with the concept of a master calendar, as the term has been used in the Judicial Council rules, and subverts the legislative policy of allowing the litigant to make [its] motion five days before the trial. In every multi-judge court it is necessary to have some procedure whereby a presiding judge or supervising judge transfers and retransfers cases in order to distribute the business of the court. It is common to refer to the department of the presiding judge or supervising judge as the 'master calendar department.' *But section 170.6 cannot be construed as meaning that whenever a case is transferred from the presiding or supervising judge to another department, the motion must be made at that time or be forever barred.*" (Italics added.)

Thus, we must look beyond the "master calendar department" label and determine whether a given method of assigning cases effectuates the function and purpose of the master calendar rule before we can conclude that an assignment from a "true" master calendar has occurred for the purposes of section 170.6.

*People* v. *Escobedo* (1973) 35 Cal.App.3d 32 [110 Cal.Rptr. 550] explains the underlying purpose of the master calendar rule. There, a judge in department E, a master calendar department, assigned the defendant's case to department F for future trial. Over five months later, defendant made a section 170.6 motion against the judge sitting in department F, invoking the 10-day/5-day rule previously discussed. The lower court denied the motion, finding that an assignment from a criminal master calendar had occurred and thus the motion should have been made at the time of the assignment, pursuant to the master calendar rule.

The Court of Appeal reversed. In so doing, it noted the distinction between a master calendar department and a true master calendar as envisioned by section 170.6. Under a true master calendar, a "ready case is assigned to a ready department." (*People* v. *Escobedo, supra,* 35 Cal.App.3d at p. 38.) Under such circumstances, "it would be impracticable to allow the litigant five days to consider the advisability of a disqualification motion, with the trial department *ready and able to commence the trial forthwith.*" (*Ibid.,* italics added.) The court then noted, "The Legislature resolved that problem by requiring that the motion be made, if at all, in the master calendar department immediately upon the announcement of the assignment, thereby permitting the judge in the master calendar department to make an immediate assignment to another department and immediately to utilize the challenged judge for some other pending case." (*Ibid.*) When a master calendar department "assign[s] a case to a trial department well in advance

of the trial date," the rationale of the master calendar rule does not apply and the 10-day/5-day rule properly applies. (*Id.*, at p. 39.)

In *Escobedo*, the court held that because the case was effectively assigned out by the master calendar department only for *future* trial, it was not a master calendar assignment within the meaning of section 170.6, and thus the lower court improperly invoked the master calendar rule. (*People v. Escobedo, supra*, 35 Cal.App.3d at pp. 39-40; see also *Villarruel v. Superior Court, supra*, 35 Cal.App.3d at p. 564 ["When the case is assigned for a future trial, the reasons for the special 'master calendar' provision in section 170.6 do not exist."]; Cal. Criminal Law Procedure and Practice (Cont.Ed.Bar. 1986) Disqualification of Judge, § 17.1, p. 342 ["If the case is assigned from a master calendar court to a trial court (*for trial to begin on that day*), the challenge must be made to the judge supervising the master calendar not later than the time the case is assigned for trial." (Italics added.)].)[7]

Here, the master calendar department "assign[ed] [the] case to a trial department well in advance of the trial date . . . ." (*Escobedo, supra*, 35 Cal.App.3d at p. 39.) (In fact, no trial date had even been selected.) The parties acknowledged that the case was *not* ready for trial on the day of the assignment and it was not assigned to a ready department. There was no practical need to immediately disqualify Judge Trammell so that he might hear another pending case that day. Thus, because Judge Klausner transferred the case for "trial setting" for a future trial date, there was no assignment for trial by a judge supervising the master calendar within the

[7]Respondent court argues that because these authorities relied on former rule 223 of the California Rules of Court, which defined the operation of a master calendar court in civil matters, they are no longer valid authority. Rather, according to respondent, the present rule 205 of the California Rules of Court contains a "more flexible concept of a master calendar court" that allows application of the master calendar rule to cases assigned for future trial.

We are not persuaded by this contention. We agree with amicus curiae Los Angeles County Public Defender that the present rule 205 of the California Rules of Court merely allows a presiding judge to appoint a master calendar judge, and assign to him or her the duties of a master calendar department. It in no way defines the operation of a master calendar.

Moreover, " 'It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and that the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary.' " (*Palermo v. Stockton Theaters, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1].) As noted, rule 205 of the California Rules of Court does not define the operation of a master calendar. Thus, even if the definition of "master calendar," as used in section 170.6, does depend on that term's definition in the California Rules of Court, the definition of "master calendar" as it existed under former rule 223 controls because there is no evidence that rule 205 in any way altered the meaning of the term "master calendar."

meaning of section 170.6. ■ For the master calendar rule to apply, there must be a true master calendar assignment of a ready case to a ready courtroom.[8]

■ Respondent court argues that more recent cases have rejected the readiness requirement for invoking the master calendar rule. Section 170.6, subdivision (2), as it was initially enacted, did not contain the 10-day limitation period for disqualification motions when there was an all purpose assignment. In *Woodman, supra,* 196 Cal.App.3d 407, and *Augustyn, supra,* 186 Cal.App.3d 1221, the courts held that when there is an assignment from a master calendar department to a trial court for all purposes, the judge who will preside at the trial is instantly identified with reasonable certainty and thus the master calendar rule will apply, even though the trial will occur at some uncertain future date. Respondent reads these cases as a total rejection of the readiness requirement.

The legislative response to the foregoing cases was to amend section 170.6, subdivision (2), to allow a litigant 10 days to file a challenge when there has been an all purpose assignment. (*Mackey* v. *Superior Court* (1990) 221 Cal.App.3d 1124, 1127, fn. 3 [270 Cal.Rptr. 905].) Respondent, however, attributes a different motive to the Legislature in amending section 170.6. Rather than acting in response to the holdings of *Woodman* and *Augustyn,* both *supra,* respondent argues that the Legislature was merely codifying the rule established in *Beverly Union Co.* v. *Superior Court* (1988) 206 Cal.App.3d 40 [253 Cal.Rptr. 359], and *Lawrence* v. *Superior Court, supra,* 206 Cal.App.3d 611, which upheld local policies requiring litigants to exercise their section 170.6 challenges within 10 days of certain all purpose civil assignments, when it amended section 170.6. Respondent offers no evidence in support of this claim.

Moreover, our own research confirms that the Legislature was acting in response to *Woodman* and *Augustyn,* both *supra,* when it amended section 170.6, subdivision (2), to add the all purpose assignment rule. Those cases held that when there is an all purpose assignment, a litigant must make a section 170.6 challenge " 'as soon as possible after he knows with some reasonable certainty who the actual trial judge will be.' " (*Woodman, supra,* 196 Cal.App.3d at p. 419, quoting *Augustyn, supra,* 186 Cal.App.3d at p.

---

[8]By stating that the courtroom must be "ready," we do not suggest that the courtroom actually be idle at the time of assignment. Rather, we mean that the courtroom is available or reasonably expected to become available shortly so that the trial may commence. For example, an assignment made in the morning for a trial expected to begin that afternoon could fall within the master calendar rule, as could an assignment made in the afternoon for a trial expected to begin the following morning. (Cf. Cal. Criminal Law Procedure and Practice, *supra,* § 17.1, p. 342 [assignment for trial to begin on the same day].)

1228.) In the Legislative Counsel's Digest of the Senate bill amending section 170.6, the author noted, "Existing case law requires that a peremptory challenge to a judge who has been assigned to a case for 'all purposes' must be made at the earliest reasonable opportunity when the judge's identity is known. [¶] This bill would require that a party make his or her peremptory challenge within 10 days after notice of the judge's all purpose assignment, as specified." (Sen. Bill No. 690 (4 Stats. 1989 (Reg. Sess.) Summary Dig., p. 174.) Clearly, this preamble directly addresses the holdings of *Woodman* and *Augustyn.* We thus conclude that in amending section 170.6, the Legislature was responding to those cases. (See *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439] [digest of the Legislative Counsel indicative of legislative intent].) To the extent that those cases can be read to eliminate the readiness component of the master calendar rule in situations other than all purpose assignments, they have effectively been abrogated by the Legislature. Therefore, the master calendar rule was inapplicable to this case.

Having found the master calendar rule inapplicable to this case, it is clear that because petitioner filed the section 170.6 motion on the same day the case was assigned, the motion was timely under either of the remaining exceptions to the general rule (the all purpose assignment rule or the 10-day/5-day rule). We address these two remaining exceptions, however, in light of the considerable confusion in the lower courts regarding their scope and application.

C. *All Purpose Assignment Rule*

 Section 170.6 does not specifically address the situation in which a master calendar department assigns a case to a "long cause" trial department for trial setting. Section 170.6, subdivision (2), states: "In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be." Thus, if it is determined that the assignment in this case is closely analogous to an all purpose assignment, then the all purpose assignment rule, which requires a litigant to file a disqualification motion "within 10 days after notice of the all purpose assignment," (*ibid.*) would apply.[9] If that rule applied in the present case, the People's section 170.6 challenge, which was made the same day as the assignment, would be deemed timely.

---

[9]Amicus curiae argues that because, unlike civil cases, there is no rule of court "authorizing an assignment of a criminal case to a single judge for 'all purposes,' " there can not be an all purpose assignment in a criminal case. This issue appears meritless, as section 170.6 contains no requirement that a rule of court authorize a particular type of case assignment before that section's limitations may apply. Moreover, the Legislature itself has authorized criminal all purpose assignments. In *Woodman, supra,* 196 Cal.App.3d 407, a *criminal* case, there was an all purpose assignment. As noted, the Legislature reacted to *Woodman* by amending section

As noted, Judge Klausner's minute order of July 17, 1991, stated that the assignment to department 104 was for all purposes. As we discussed regarding the term "master calendar department," the label chosen to identify a given case assignment does not automatically control. Such label may, however, be viewed as prima facie evidence as to what type of assignment occurred. (Cf. *Shipp* v. *Superior Court, supra,* 5 Cal.App.4th at p. 152 [local court policy that requires all family law proceedings be assigned to specific judge for all purposes, shifts burden to party contesting all purpose assignment].) Thus, in this case, we may presume an all purpose assignment occurred in the absence of evidence in the record to the contrary.[10]

Although the evidence in the record is scant, the facts of this case support the conclusion that an all purpose assignment, or the substantial equivalent thereof, occurred. If so, petitioner had 10 days to file a section 170.6 challenge after notice of the assignment. Because petitioner filed the challenge on the same day the assignment was made, it was timely.

■ Section 170.6, subdivision (2), does not explain when an assignment to a judge may be deemed one for all purposes. As noted in *Zdonek* v. *Superior Court* (1974) 38 Cal.App.3d 849, 856 [113 Cal.Rptr. 669] (dis. opn. of Kingsley, J.), however, "The reason for an 'all purpose' assignment lies in the pragmatic value of having all matters arising in a complicated and potentially long drawn-out case to be heard by one judge, so that the time of litigants, counsel and the superior court need not be wasted in the repetitive education of successive judges in the intricacies of that kind of case."

Moreover, as the *Woodman* court stated: "An all-purpose assignment clearly contemplates assignment to a specific judge to process the litigation in its totality rather than a trial department in which the identity of the judge is subject to the vagaries of personal and administrative necessity. The purpose of such assignment is to permit the efficient disposition of complex matters and this commendable purpose would be utterly frustrated unless there is certainty that once assigned, the all-purpose judge will preside over the action from beginning to end." (*Woodman, supra,* 196 Cal.App.3d at p.

---

170.6 to add the all purpose assignment rule. Significantly, the Legislature did not limit the amendment's application to civil cases. Thus, we may presume that the Legislature intended the all purpose assignment rule to apply to *criminal* all purpose assignments, which by necessary implication, authorizes such assignments. (See 58 Cal.Jur.3d, Statutes, §§ 92, 112, pp. 446-449, 497-500 [Legislature is presumed to know of existing case law; failure to alter judicial interpretation of statute in subsequent amendment indicative of legislative approval of such interpretation].) The fact that all purpose assignments are not expressly authorized by the California Rules of Court is irrelevant. (See Cal. Const., art. VI, § 6 [California Rules of Court may not conflict with statutory law].)

[10]Moreover, the minute order gave the parties clear notice of the all purpose assignment rule's potential applicability. Thus, lack of notice is not an issue in this case.

421.) Thus, when there is an all purpose assignment, "[t]he litigant does not need any further information to know who will try the case," because the assignment "instantly pinpoints" that judge. (*Augustyn, supra,* 186 Cal.App.3d at p. 1228.)[11]

 Thus, for a case assignment to be an all purpose assignment, two prerequisites must be met. First, the method of assigning cases must "instantly pinpoint" the judge whom the parties can expect to ultimately preside at trial.[12] Second, that same judge must be expected to process the case "in its totality" (*Woodman, supra,* 196 Cal.App.3d at p. 421), from the time of the assignment,[13] thereby "acquiring an expertise regarding the factual and legal issues involved, which will accelerate the legal process." (*Shipp* v. *Superior Court, supra,* 5 Cal.App.4th at p. 151.) "[C]omplicated and potentially long drawn-out case[s]" are particularly conducive to all purpose assignments. (*Zdonek* v. *Superior Court, supra,* 38 Cal.App.3d 849, 856 (dis. opn. of Kingsley, J.); cf. Cal. Stds. Jud. Admin., § 19, subds. (c), (d) [23 West's Cal. Codes Ann. Rules, pt. 2 (1992 supp.) p. 392] [in civil cases, "complex litigation," i.e., litigation that involves "multiple related cases, extensive pretrial activity, extended trial times, difficult or novel issues, and postjudgment judicial supervision," for instance, "should be assigned to one judge for all purposes"].)

---

[11]As noted previously, the Legislature, by amending section 170.6 to add the all purpose assignment rule, implicitly abrogated *Woodman* and *Augustyn* to the extent that they held the master calendar rule applicable to all purpose assignments. We rely on these cases now (and the dissenting opinion in *Zdonek* v. *Superior Court, supra,* which reached the same conclusion as *Woodman* and *Augustyn*) only for their discussions of the *nature* of an all purpose assignment. The *timing* of section 170.6 challenges when such assignments are found is now clearly governed by that statute.

[12]We note the conflict among lower courts as to whether an assignment to a department by number, rather than to a judge by name, can be an assignment for all purposes. For the reasons discussed in part II.D. of this opinion, *post,* which concerns the application of the 10-day/5-day rule, we hold that when there is an assignment to a department by number, if a particular judge regularly presides in that department and that judge's identity is either known to the litigant or discoverable on reasonable inquiry, and if there is reasonable certainty that this judge will ultimately hear the case (i.e., evidence is produced indicating that the case will likely remain in the department to which it was initially assigned), then a court may properly invoke the all purpose assignment rule, assuming such an assignment is involved.

[13]We note that some cases have suggested that in an all purpose assignment, the specified judge processes the case "from start to finish." (See e.g., *Shipp* v. *Superior Court, supra,* 5 Cal.App.4th at p. 151.) Such phraseology would indicate that a single judge must handle *every* matter in a given case. We believe that this language, especially in the criminal context, is overbroad and we decline to adopt such an impracticable standard for criminal cases in which the all purpose assignment rule is invoked.

Rather, if, at the time of the assignment, substantial matters remain to be processed in addition to trial, and the assigned judge is expected to process *all* those matters from that point on (thus allowing him or her acquire expertise in, and familiarity with, the intricacies of the case), then the all purpose assignment rule may apply.

In this case, the record contains some evidence that the Central District's method of assigning cases to "long cause" trial departments does, at the time of the assignment, pinpoint with reasonable certainty the identity of the judge who will ultimately preside at the trial. At the hearing on petitioner's section 170.6 motion, Judge Trammell explained: "This court, the seven, what we call long-cause trial courts, the judges are . . . specifically here to try the cases and only try the cases that are sent to them. [¶] I personally have got a two-year commitment that I'm going to be here, a minimum of two years . . . . [¶] This case, this particular instance, these seven [departments], the cases will stay and the judge takes the cases with the view, unless something should happen, if the [cause] is transferred." We discern from this statement that a particular judge is assigned to each of the Central District's seven "long cause" trial departments for two-year periods, and that case transfer after the initial assignment is rare. Thus, it appears an assignment of a case to a "long cause" trial department instantly pinpoints the judge who will preside at trial with certainty sufficient to invoke the all purpose assignment rule.

Thus, the first prong of the test for the all purpose assignment rule may be met here. Moreover, the second prong appears to be met as well. Judge Klausner assigned real party Lavi's case to a "long cause" trial department because it was a "complicated and potentially long drawn-out case." (*Zdonek, supra,* 38 Cal.App.3d at p. 856 (dis. opn. of Kingsley, J.).) Moreover, despite Judge Trammell's statement that he simply "tr[ies] cases," the record indicates that much remained to be done before this case could go to trial. As noted, the case was sent to Judge Trammell for "trial setting." Thus, a trial date had to be set. At the July 18 hearing, Judge Trammell indicated that a pretrial conference, over which he would preside, was to be scheduled. He also accepted real party Lavi's waiver of his speedy trial rights. Moreover, Judge Trammell addressed the issue of bail. In addition, the People indicated that there were defense motions yet to be heard. Presumably, Judge Trammell would hear these (as well as any other issues that arose before the trial, which was not to occur for over two months).

It appears then, that when Judge Klausner assigned the case to department 104, Judge Trammell would handle the case from that point forward and would have the opportunity to acquire "expertise regarding the factual and legal issues involved, which [would] accelerate the legal process." (*Shipp* v. *Superior Court, supra,* 5 Cal.App.4th at p. 151.) Thus, the second prong of the test for an all purpose assignment appears to be met.

The assignment in this case identified Judge Trammell, with reasonable certainty, as the judge who would ultimately preside at trial. In addition, it is clear that this was a "long cause" matter with significant issues remaining to be resolved. It appears that Judge Trammell would process the proceeding from the time of the assignment through final disposition. Thus, we believe an all purpose assignment occurred, giving petitioner 10 days from the time of notice of the assignment in which to file a section 170.6 challenge. Because the motion was made on the same day as the assignment, we conclude that it was timely.

### D. *The 10-day/5-day Rule*

Section 170.6, subdivision (2), provides in part, "Where the judge, *other than a judge assigned to the case for all purposes*, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date." (Italics added.) ▉▉▉ Thus, when there is an all purpose assignment, the 10-day/5-day rule is inapplicable. If, however, an all purpose assignment did not occur, and the foregoing rule applied, petitioner's challenge still would be deemed timely.

Although we believe an all purpose assignment occurred here, the evidence concerning the nature and operation of the Central District's "long cause" trial departments is scant. To reach our conclusion, we made certain inferences about these departments. However, even if an all purpose assignment did not really occur in this case, the 10-day/5-day rule would apply, rendering petitioner's section 170.6 motion timely.

We first conclude that Judge Trammell was sufficiently identified to invoke the 10-day/5-day rule. As noted above, petitioner had actual as well as constructive knowledge of Judge Trammell's identity. Because petitioner exercised the section 170.6 challenge "at least five days before [the trial] date" (§ 170.6, subd. (2)), it was timely filed.[14]

Petitioner and amicus curiae note, however, that the application of the 10-day/5-day rule has caused considerable confusion among the lower courts. Most of this confusion concerns the degree of certainty with which a

---

[14]As noted, at the hearing of July 17, 1991, Judge Klausner transferred the case to department 104 for "trial setting." It was not until the following day, July 18, that Judge Trammell actually set a trial date. It was at this point that the requirements of the 10-day/5-day rule became pertinent.

judge must be "known" for section 170.6 to apply. When a case is sent to a court for a trial to begin in the future, the possibilities of transfer, a judge's illness, or a judge's retirement make it uncertain which judge will ultimately hear the case. Furthermore, when a case is assigned to a department by number, rather than to a judge by name, the confusion is accentuated. (Compare *Bouchard* v. *Insona* (1980) 105 Cal.App.3d 768, 774 [164 Cal.Rptr. 505] [10-day/5-day rule inapplicable when case was assigned to department by number, rather than to particular judge, because of possibility of reassignment], and *Retes* v. *Superior Court* (1981) 122 Cal.App.3d 799, 806 [176 Cal.Rptr. 160] [10-day/5-day rule requires judge to be known with "certainty" and is inapplicable even when assigned judge is named, if there is evidence that there is frequent reassignment], with *Lawrence* v. *Superior Court, supra,* 206 Cal.App.3d at p. 617 [assignment to department by number sufficient to invoke 10-day/5-day rule if "upon further investigation or inquiry, the identity of the judge assigned to a particular department is ascertainable"] and *Thomas Realty Co.* v. *Superior Court* (1988) 199 Cal.App.3d 91, 95 [244 Cal.Rptr. 733] [10-day/5-day rule applicable where case was assigned to department by number].)

First, we note that whether a judge is identified by name or department, and whether there is an all purpose assignment, an assignment from a master calendar department, an assignment to a known judge, or any other type of assignment, a particular judge may not ultimately hear a case for a variety of reasons including transfer, illness, death, retirement, or recusal. To decline to give effect to the timely challenge requirements merely because of such possibilities would render these requirements meaningless.

Thus, when section 170.6 speaks of a "known judge," it does not require that the "known judge," with absolute certainty, will ultimately preside over the trial. The realities of the litigation process dictate that, at best, in applying the 10-day/5-day rule to the judge known by the parties to have been assigned to the case, there be reasonable assurance that the judge will in fact hear the case. In this case, Judge Klausner assigned the case to department 104, the department in which Judge Trammell *regularly* sits. Nothing in the record indicates that it was unlikely that he would ultimately hear the case. (Cf. *Retes* v. *Superior Court, supra,* 122 Cal.App.3d at pp. 805-806 [10-day/5-day rule inapplicable because judge not "known"; record indicated that judge frequently transferred cases initially assigned to him].) Even if petitioner had no actual knowledge that Judge Trammell presides over department 104, "further investigation or inquiry" would have disclosed this fact. (*Lawrence* v. *Superior Court, supra,* 206 Cal.App.3d at p. 617.) Thus, it was reasonably certain Judge Trammell would hear the case and his

identity was "known at least 10 days before the date set for trial." Because petitioner's section 170.6 motion was filed more than five days before trial, it was timely.

■ Amicus curiae asks us to draw a distinction between criminal and civil cases for purposes of the 10-day/5-day rule. It argues that experience reflects that criminal cases commonly are transferred between departments before trial and thus, when a case is assigned to a department by number or even to a judge by name, the trial judge's identity cannot be accurately predicted until the date of trial. It observes that *Lawrence v. Superior Court, supra,* 206 Cal.App.3d 611, *Beverly Union Co. v. Superior Court, supra,* 206 Cal.App.3d 40, and *Thomas Realty Co. v. Superior Court, supra,* 199 Cal.App.3d 91, which held that an assignment to a department by number gives notice of which judge will hear the case, thus making the 10-day/5-day rule applicable, were civil cases, and asserts that in the criminal context, speedy trial considerations increase the likelihood of pretrial transfers.

Amicus curiae's argument would require us to hold that absent a criminal defendant's waiver of his or her speedy trial rights, a trial judge in a criminal action can never be "known" before trial for purposes of section 170.6, and thus the general rule, allowing a disqualification motion to be made at any time before trial, should apply.[15]

There is no evidence in the record, other than amicus curiae's unsupported statement, that criminal cases are more likely to be transferred before trial than civil ones. In addition, to accept amicus curiae's claim would require courts to selectively apply the various provisions of section 170.6, depending on whether a case is criminal or civil. We are unwilling to adopt such a rule absent a legislative directive to do so. Finally, amicus curiae ignores the fact that cases such as *Escobedo* and *Villarruel,* both *supra,* in which the courts invoked the 10-day/5-day rule, were criminal cases. The Legislature is presumed to have known of these previous decisions, and its failure to address their holdings in subsequent amendments of section 170.6 is tantamount to acquiescence in those decisions. (See *People v. Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].)

Petitioner plainly knew that Judge Trammell regularly presided in department 104. We conclude that if the all purpose assignment rule did not apply, when Judge Klausner assigned this case to department 104, this was an

---

[15]During oral argument, petitioners made similar claims in the context of the all purpose assignment rule.

assignment to a known judge, and hence the 10-day/5-day rule of section 170.6 applied. Because petitioner's section 170.6 challenge was made more than five days before trial, it was timely under this rule.

### III. *Conclusion*

We hold that for the master calendar rule to apply, a trial-ready case must be assigned to a court that is ready and able to hear the case. Whether the master calendar rule can be fairly applied when there is an assignment to a department by number, rather than to a judge by name, is a fact-specific inquiry, but, generally speaking, litigants may be charged with knowledge of which judges regularly preside in the various departments of the court system in which they are litigating.

When the master calendar rule requirements are not met, either the all purpose assignment rule or the 10-day/5-day rule may apply. When a litigant shows that a case assignment instantly identifies the judge who is reasonably certain to preside over substantial remaining matters from that point forward, including the trial, thereby allowing the judge to gain familiarity and expertise on the complex issues involved, the all purpose assignment rule governs. When neither the master calendar rule nor the all purpose assignment rule controls, a litigant may invoke the 10-day/5-day rule as soon as the case is assigned to a known judge. If no reasonable certainty exists as to the trial judge's identity, however, then the general rule of section 170.6, that a challenge may be made any time before trial, applies.

In this case, Judge Klausner transferred the matter to "Department 104," Judge Trammell's department, for "trial setting." This was not an assignment of a trial-ready case to a trial-ready courtroom, and thus the Court of Appeal erroneously invoked the master calendar rule. Rather, it appears to have been in the nature of an all purpose assignment because the assignment instantly identified Judge Trammell as the judge who would process the complex litigation in its entirety from that point forward. If the all purpose assignment rule did not apply, however, the 10-day/5-day rule would control. Petitioner knew that Judge Trammell presided over department 104. Thus, this was an assignment to a judge, "known at least 10 days before the date set for trial." Petitioner exercised the challenge on the day of the assignment. There was no possibility that the case would go to trial within five days of petitioner's challenge. Thus, under either of the latter rules, the challenge was timely made.

We reverse the judgment of the Court of Appeal with directions to issue a peremptory writ of mandate.

Mosk, J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

On May 13, 1993, the opinion was modified to read as printed above.