[No. G033896. Fourth Dist., Div. Three. Sept. 30, 2004.]

RODNEY HEMINGWAY, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE OF THE STATE OF CALIFORNIA, Real Party in Interest.

### COUNSEL

Deborah A. Kwast, Public Defender, Thomas Havlena, Chief Deputy Public Defender, and Kevin J. Phillips, Assistant Public Defender, for Petitioner.

Benton, Orr, Duval & Buckingham and Brenda L. McCormick for Respondent Court.

Tony Rackauckas, District Attorney, and Gregory J. Robischon, Assistant Deputy District Attorney, for Real Party in Interest.

### OPINION

**O'LEARY, J.**—Petitioner Rodney Hemingway argues the trial court erred by failing to respond immediately to his motion to disqualify itself pursuant to Code of Civil Procedure section 170.6[1] and by improperly denying his motion as untimely. We agree. In a supplemental petition, Hemingway contends the same court issued an unlawful nunc pro tunc order in an attempt to rectify its failure to act when the motion was first filed. Again, we agree. The petition is granted.

#### FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2004, the prosecution filed a felony complaint charging Hemingway with one felony count of domestic battery with corporal injury as a felony, and five misdemeanor counts involving domestic violence battery, battery, and assault. On the same day, Hemingway appeared without counsel in Department S3 of the Laguna Niguel facility before Judge Pamela L. Iles for arraignment. Hemingway agreed to waive his right to be arraigned, and the court continued the arraignment for 17 days to January 22, 2004, to give Hemingway an opportunity to obtain counsel. At the same time, the court assigned the case to itself for all purposes. On January 22, Hemingway again appeared in court without counsel and the court appointed the public defender's office. Hemingway was arraigned on the complaint and entered pleas of not guilty.

After numerous continuances, a preliminary hearing was eventually held on April 6, 2004. Hemingway was held to answer on counts 1 through 4. The court made a finding there was "no sufficient cause to believe the defendant guilty of count 5 and 6" and ordered them dismissed. Hemingway was ordered to appear for arraignment on the information on April 20, 2004.

---

[1] All further references are to the Code of Civil Procedure.

Hemingway appeared on the date set with counsel and was arraigned on the information. The court again assigned the case to itself for all purposes including trial. On April 29, 2004, counsel filed a peremptory challenge pursuant to section 170.6. The minute order states: "Affidavit of prejudice pursuant to Civil Code of Procedure [sic] 170.6 filed by defense against Pamela L. Iles, Judge. Civil Code of Procedure [sic] 170.6 is taken under submission pending the outcome in the Court of Appeals [sic] regarding this same issue."

On May 24, 2004, the court made a nunc pro tunc entry in the minutes dating back to April 29, stating the "[m]otion taken under submission by the court is incorrect. (Entered NUNC_PRO_TUNC on 05/20/04) Motion denied. (Entered NUNC_PRO_TUNC on 05/20/04) [¶] Court finds the motion is untimely. This is the same issue as on the Steidinger and Grant cases that are before the Court of Appeal regarding direct calendaring and vertical assignments. (Entered NUNC_PRO_TUNC on 05/20/04)."

That same day, during the morning session of a scheduled pretrial hearing, the court explained in open court, "I'm correcting that at this point in time because the court's intention on 4/29 was to deny the affidavit under [section] 170.6, and I inadvertently used the wrong language because I wasn't taking it under submission. I have several cases on the same issue as to whether or not the court can handle these cases vertically. [¶] And so what I'm doing is, at this point in time, correcting and amending the record and ordering the parties to deliver the amended record to the Court of Appeal that shows that the [section] 170.6 filed against this court on 4/29 is denied as untimely. I'm issuing a nunc pro tunc order to amend the record to so reflect and ordering the parties to deliver that amended record to the Court of Appeal."

During the afternoon pretrial session, the court made additional comments on the order. It explained, "The first thing the court wants to do is clarify the record. On 4/29, the court received an affidavit under [section] 170.6, and the court erroneously stated that the court was not going to set this, but it was going to hold the [section] 170 [.6] [sic] under submission. That is not what I intended because I intended to deny it as untimely and reset a date. [¶] So I'm going to correct the record and order the minutes nunc pro tunc corrected, and a new minute order sent to all parties and order the parties to forward that to the Court of Appeal, because the court's intention was not to accept the affidavit as untimely, and then let you go from there. It went up under submission. It wasn't supposed to be that way."

THE WRIT PROCEEDINGS

After the court denied Hemingway's disqualification motion, he filed a petition for a writ of prohibition and or mandate and a request for an immediate stay of the proceedings. Hemingway complained the court had no authority to take his disqualification motion under submission. He further alleged that by continuing to schedule subsequent proceedings in her court-room, the court had for all intents and purposes denied his motion. On the question of timeliness, Hemingway argued his motion was timely filed because the judicial officer was sitting as a magistrate when she first assigned the case to herself and, therefore, lacked authority to assign the case to herself for all purposes. Hemingway filed a supplemental petition after the court's May 20, 2004, nunc pro tunc order arguing the order was unlawful.

We invited the district attorney to respond to both petitions. It "respectfully decline[d] to become involved in this inherently judicial branch question." The district attorney explained he believed he was "not really an adverse party to these writ petitions" and he did not "have any legally cognizable interest in their resolution."

Recognizing the superior court ordinarily lacks standing to file an opposition (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1071 [103 Cal.Rptr.2d 751, 16 P.3d 166]), we nevertheless invited a response from the superior court due to the obvious impact any ruling would have on the court's case management system. (*Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1315, fn. 2 [104 Cal.Rptr.2d 173] [treating trial court's return as an amicus curiae brief filed in support of real party in interest].) After receiving an informal response, this court stayed all proceedings and issued an order to show cause. We will consider the superior court's informal response and formal return as an amicus curiae brief filed in support of real party in interest. (*Ibid.*)

GENERAL RULES GOVERNING DISQUALIFICATION

■ "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate." (§ 170.3, subd. (d).) The standard of review is abuse of discretion and "[a] trial court abuses its discretion when it erroneously denies as untimely a motion to disqualify a judge pursuant to section 170.6." (*Zilog, Inc. v. Superior Court, supra,* 86 Cal.App.4th at p. 1315.)

"Section 170.6 guarantees 'to litigants an extraordinary right to disqualify a judge. The right is "automatic" in the sense that a good faith *belief* in prejudice is alone sufficient, proof of facts showing actual prejudice not being

required. [Citations.]' [Citations.] The object of this section is to provide the party and attorney with a substitution of judge to safeguard the right to a fair trial or hearing. [Citation.] This section is intended to ensure confidence in the judiciary and avoid the suspicion which might arise from the belief of a litigant that the judge is biased where such belief is difficult, if not impossible, to prove. [Citation.] The section is liberally construed and the trend is to grant relief unless absolutely forbidden by statute. [Citations.]" (*People v. Superior Court (Maloy)* (2001) 91 Cal.App.4th 391, 394–395 [109 Cal.Rptr.2d 897].)

■ "As a general rule, a challenge of a judge is permitted under section 170.6 any time before the commencement of a trial or hearing. [Citations.]" (*People v. Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1171 [17 Cal.Rptr.2d 815, 847 P.2d 1031].) The exceptions to the general rule, known as the 10-day/5-day rule, the master calendar rule, and the all purpose assignment rule, are explained in section 170.6, subdivision (a)(2), which states in part, "Where the judge, other than a judge assigned to the case for all purposes, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least 5 days before that date. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. If directed to the trial of a cause that has been assigned to a judge for all purposes, the motion shall be made to the assigned judge or to the presiding judge by a party within 10 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 10 days after the appearance."

"Thus, for any given factual scenario, it must be determined whether any of section 170.6, subdivision [(a)](2)'s pertinent exceptions (the 10-day/5-day rule, the master calendar rule, or the all purpose assignment rule) are applicable, or whether the general rule (the commencement of trial rule) should apply." (*People v. Superior Court (Lavi), supra,* 4 Cal.4th at p. 1172.)

DISCUSSION

Although the superior court concedes a magistrate lacks the jurisdiction to make an all purpose assignment, it suggests Judge Iles was acting as a judge rather than as a magistrate when she assigned the matter to herself on January 5, 2004. The superior court contends Judge Iles had been delegated the authority to make such an all purpose assignment or in the alternative the case was before her from its inception for all purposes by virtue of the superior court's direct calendaring system for domestic violence cases. Therefore, according to the superior court, the 10-day/5-day rule applies and there can be no question but that Hemingway's challenge was untimely.

Hemingway cites *Flores v. Superior Court* (1991) 226 Cal.App.3d 797 [277 Cal.Rptr. 90], for the proposition that a judicial officer is without authority to make an all purpose assignment until after the filing of an information (regardless of whether he or she acts as a magistrate or a judge). We disagree with the suggestion that *Flores* abrogates the assignment power afforded the presiding judge and the supervising judge of the criminal division. (Cal. Rules of Court, rules 6.603, 227.2(a).) But we conclude, for other reasons, the purported all purpose assignment made on January 5, 2004, was of no legal consequence, and there are no other circumstances that would support the superior court's argument that Hemingway's challenge was untimely.

We will address each of the superior court's theories separately by stating reasons why we find each without merit.

### Delegation of Assignment Power Argument

Initially, the superior court's informal response claimed Judge Iles derived her authority to assign cases from her status as the assistant supervising judge of the Laguna Niguel facility. In a footnote in the return, the superior court recanted that claim and acknowledged Judge Iles is not the assistant supervising judge. Having made this concession, the superior court offered a new theory: Judge Iles was empowered by the presiding judge or the supervising judge of the criminal division to designate herself as a judge for all purposes. For this proposition, the superior court cites the delegation authority given to the presiding judge in California Rules of Court, rule 6.603 and to the supervising judge of the criminal division in rule 227.2. Rule 6.603(d) states, "The presiding judge may delegate any of the specific duties listed in this rule to another judge . . . ." And rule 227.2(c) states, "the presiding judge may designate additional judges under the direction of the supervising judge to perform the duties specified in this rule [duties of supervising judge of the criminal division]."

This record is totally devoid of any evidence showing the presiding judge or the supervising judge of the criminal division ever delegated any assignment power to Judge Iles. There is no factual basis to support the claim Judge Iles was empowered to make an all purpose assignment to herself when Hemingway first appeared before her or at any time thereafter.

### Existing Blanket Assignment by the Presiding Judge Argument

California Rules of Court, rule 6.603(b)(1)(B), gives a presiding judge the authority to "[a]pportion the business of the court, including

assigning and reassigning cases to departments." Consistent with an exercise of this authority, the superior court contends the presiding judge, by administrative order, assigned all domestic violence cases filed in the Laguna Niguel facility to Judge Iles for all purposes. The court has misconstrued the scope and purpose of the administrative order cited.

The administrative order relied upon by the superior court, and filed with the informal response, is amended Administrative Order No. 00/3 of the Orange County Superior Court, dated December 20, 2000, from then Presiding Judge C. Robert Jameson. The superior court asserts the current presiding judge has "continued the prior court policy to directly assign all felony domestic violence cases . . . to one judge." We agree, the current presiding judge implicitly adopted the order, but we conclude the order failed from its inception to establish any "one judge" policy.

As of January 1, 2001, Harbor Justice Center and South Justice Center merged into one justice center known as the Harbor Justice Center, which consists of the Newport Beach, Laguna Niguel, and Laguna Hills facilities. The order explains the details of the Harbor Justice Center merger, including the workload adjustment and judicial assignments. The order states four judges are to be assigned to the Laguna Niguel facility, and an assistant supervising judge located at the Laguna Niguel facility "will provide support in managing the Laguna Niguel and Laguna Hills facilities by providing assistance with judicial staffing issues, calendars and administrative matters."

According to the administrative order, "[a]ll . . . misdemeanor and felony pleadings for violations occurring within the venue and historical jurisdiction of the South Justice Center will be filed at the Harbor Justice Center, Laguna Niguel Facility," as well as "all domestic violence cases arising out of incidents occurring in Newport Beach, Costa Mesa, Laguna Beach, Irvine and adjacent unincorporated areas will be filed directly at the Harbor Justice Center, Laguna Niguel Facility." The order states that when all parties have announced ready for jury trial, "the attorneys and parties will be ordered to appear on the following day at the Newport Beach Facility, Department H1. The Laguna Niguel staff will notify Department H1 immediately upon the transfer of a case for jury trial."

The administrative order does not state that domestic violence cases are assigned to one judge or, for that matter, one courtroom, and the administrative order never mentions Judge Iles or Department S3 of the Laguna Niguel facility. The order only indicates that "domestic violence cases . . . will be filed directly with the Harbor Justice Center, Laguna Niguel Facility." There is no basis upon which we can conclude either the former or the present

presiding judge intended for Judge Iles to control all domestic violence cases filed in the southern area of Orange County.

## DIRECT CALENDAR ASSIGNMENT ARGUMENT

The superior court raises a slightly different version of their administrative order argument to establish Judge Iles as a judge for all purposes. We call this the direct calendar theory and find it equally unpersuasive.

The superior court contends assigning all domestic violence cases to one judge is "in compliance with rule 4.115 of the *California Rules of Court*, which implicitly recognizes that a criminal court may be operated on a direct calendaring system." Therefore, according to the superior court, it "had the authority to assign the [domestic violence] calendar to Judge Iles under direct calendar management. . . ." There is no question that a direct calendar arrangement would be in compliance with rule 4.115, but the record is devoid of any evidence the superior court created or intended to create a direct calendaring system in Judge Iles's court or at the Laguna Niguel facility.

■ "Under a true master calendar, a 'ready case is assigned to a ready department.' [Citation.]" (*People v. Superior Court (Lavi)*, *supra*, 4 Cal.4th at p. 1175.) The superior court's established procedure was for trial ready cases to be transferred to Department H1 for assignment to an open court for trial. This case management practice is inconsistent with a court operating on a direct calendar system. The superior court's reliance on California Rules of Court, rule 4.115 is misplaced. Domestic violence cases originating at the Laguna Niguel facility are managed pursuant to a master calendar not a direct calendar system.

## THE PURPORTED NUNC PRO TUNC ORDER WAS IMPROPER

On May 24, 2004, the court vacated its submission order of April 29, 2004, stating it had intended to deny the motion, but it had "inadvertently used the wrong language." The superior court made no effort to explain and, in fact, concedes the court's order "correcting" the minute order was erroneous because it was not a proper use of a nunc pro tunc order. We take this opportunity to remind trial courts of the basic rules.

■ A court must make an *instant* determination as to the validity of a properly made section 170.6 peremptory challenge. If the motion is properly made, the disqualification takes effect instantaneously and requires the court to transfer the cause immediately for reassignment. (*Truck Ins. Exchange v. Superior Court* (1998) 67 Cal.App.4th 142, 147 [78 Cal.Rptr.2d 721].)

## CONCLUSION

■ The right to exercise a peremptory challenge under section 170.6 is a substantial right and an important part of California's system of due process that promotes fair and impartial trials and confidence in the judiciary. (*Stephens v. Superior Court* (2002) 96 Cal.App.4th 54, 61 [116 Cal.Rptr.2d 616].) Courts must refrain from any tactic or maneuver that has the practical effect of diminishing this important right.

■ As noted in *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 523 [281 Cal.Rptr. 390], requiring a defendant to file a peremptory challenge too early "defeats the purpose of section 170.6 [which is] to provide the defendant a reasonable opportunity to challenge a known trial judge. A challenge made [too] early in a criminal case, . . . will very likely be wasted on a judge who will not be the defendant's trial judge."

The superior court and the others involved in the efforts to establish dedicated domestic violence courts within the Orange County trial court system are to be commended. We recognize domestic violence courts in many instances better assist victims, increase accountability of batterers, and advance the administration of justice in countless other ways, but judicial officers handling domestic violence cases must conform their conduct to the law. This record suggests that, despite the best of intentions, a judicial officer can become so embroiled in the cause of domestic violence and can develop such a sense of ownership that an appearance of impropriety is created.

■ The structure and procedures of domestic violence courts cannot be governed by local custom and tradition, but must be governed by existing law and implemented by rules adopted in compliance with California Rules of Court, rule 981. This provision requires that each court publish its local rules controlling the practice or procedure of a court, or judge, and make copies available for distribution to attorneys and litigants. "Local rule" is defined as "every rule, regulation, order, policy, form, or standard of general application adopted by a court to govern practice or procedure in that court or by a judge of the court to govern practice or procedure in that judge's courtroom." Should the presiding judge choose to delegate any aspect of his or her authority to another judge, adequate notice must be given so litigants and lawyers can make intelligent decisions regarding the filing of disqualification motions.

## DISPOSITION

For the foregoing reasons, the petition is granted. Respondent court is ordered to vacate its order of May 20, 2004, denying Hemingway's peremptory challenge pursuant to section 170.6, and to enter a new and different order accepting the peremptory challenge of Judge Pamela L. Iles. The stay previously issued is ordered dissolved.

Sills, P. J., and Moore, J., concurred.