Filed 5/6/13  Simmons v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CHARLES SIMMONS et al., | |
| Petitioners, | |
| v. | |
| THE SUPERIOR COURT OF CONTRA COSTA COUNTY, | A138018 |
| Respondent; | (Contra Costa County Super. Ct. No. MSC1201841) |
| CHEVRON USA, INC., | |
| Real Party in Interest. | |
| REBECCA A.J. ADAMS et al., | |
| Petitioners, | |
| v. | |
| THE SUPERIOR COURT OF CONTRA COSTA COUNTY, | A138022 |
| Respondent; | (Contra Costa County Super. Ct. No. MSC1202777) |
| CHEVRON USA, INC., | |
| Real Party in Interest. | |

Petitioners Charles Simmons et al. (collectively "Simmons"), brought a toxic tort suit against real party in interest, Chevron USA, Inc., (Chevron), in Contra Costa Superior Court.  Petitioners Rebecca Adams et al. (collectively "Adams"), filed a similar suit shortly thereafter.  The Simmons and Adams plaintiffs share the same counsel. Plaintiffs in both cases seek mandamus relief ordering the superior court to grant their

peremptory challenges, filed pursuant to Code of Civil Procedure section 170.6,[1] after the trial court denied the challenges as untimely. Upon our own motion, we hereby consolidate these related writ proceedings for purposes of disposition, and, for reasons explained below, grant mandamus relief as requested.

## PROCEDURAL BACKGROUND

In their complaint, the Simmons plaintiffs allege multiple causes of action arising from a fire at the Chevron refinery in Richmond in August 2012. The complaint was stamped, "Per Local Rules this case is assigned to Dept 33." On August 15, the date of filing, a deputy clerk issued a Notice of Case Management Conference, scheduling the conference on December 31, 2012, in Department 33.

On August 22, the deputy clerk sent a Notice of Reassignment of Case (Notice) advising plaintiffs the case "is being reassigned for all purposes to the Honorable Barry P. Goode, Department 17, pursuant to complex designation." The Notice further advised the date of the case management conference had been advanced to December 27, 2012, in Department 17.

Subsequently, the trial court entered a minute order continuing the case management conference to January 30, 2013, in Department 17. ~(Ex 5)~ The clerk of court sent a notice dated September 26, 2012, to the parties stating the settlement conference had been continued from December 27, 2012, to January 30, 2013, at 9:00 a.m. in Department 17.

On November 27, 2013, the Adams plaintiffs filed their complaint, and the Simmons plaintiffs filed a first amended complaint. On the same day, a "Notice of Assignment to Department Seventeen for Case Management Determination" was filed in *Adams*, stating the matter is assigned to "Department 17, Judge B. Goode presiding, for all purposes."

On November 27, 2013, Judge Goode held a case management conference in another case, *Abercrombia v. Chevron*. The *Abercrombia* case also arose from the

---

[1] All further statutory references are to the Code of Civil Procedure.

Richmond refinery fire but involved different plaintiffs and different counsel than those in *Simmons* and *Adams*. The minute order entered after the *Abercrombia* case management conference states counsel for Chevron informed the court "that at this time there are 2 related cases and [there] may be more filed. Attorney Correll informs the court that the cases should be coordinated for discovery and deposition if not consolidated." The minute order also states, "Further case management conference set for 01/30/13 at 9:00 in Department 17." Last, the minute order states, "The court informs counsel that as of 1/2/13 this case is reassigned to Dept 9 as Judge Craddick will be the Complex Department judge at that time."

On November 28, 2012, counsel for Chevron, attorney Charles Correll, sent an e-mail to counsel representing plaintiffs in the *Abercrombia* and *Simmons* cases. The e-mail states: "At yesterday's Case Management Conference in *Abercrombia*, Judge Goode instructed me to reach out to lead counsel in the three cases pending in Contra Costa County to meet and confer about coordinated discovery and other case management issues. Ideally, your side would confer amongst yourselves and come to some agreement as to your recommendations before we all meet. [¶] Additionally: [¶] Judge Goode will no longer handle the complex case docket as of January 2. All of his cases are being transferred to Judge Craddick. Judge Good is consolidating the CMCs for *Simmons* and *Abercrombia* for January 30th. [¶] Judge Goode will talk with the judge in *McKenzie*. We can expect an order transferring *McKenzie* to the complex case docket and moving that CMC to January 30th as well."

During the first week of January 2013, counsel for the Simmons plaintiffs contacted the superior court in connection with filing a motion for pro hac vice, and were informed by court staff over the telephone that the matter had been reassigned to Judge Craddick. On January 8, 2013, the Simmons and Adams plaintiffs filed peremptory challenge motions pursuant to section 170.6. In both motions, attorney Adante Pointer declared "During the Court's case management conference on November 27, 2012, the Court informed the parties that the following matters, independently filed in this Court, would be coordinated: [¶] [*McKenzie*; *Simmons*; *Adams*; *Abercrombia*] . . . and that on

January 2, 2013, the Honorable Judge Judith Craddick would be reassigned to the Coordinated Matters. [¶] The Honorable Judith Craddick . . . is prejudiced against the plaintiffs or the interests of the plaintiffs so that plaintiffs cannot . . . have a fair and impartial trial or hearing before such judge."

On January 15, 2013, Chevron filed objections to the peremptory challenges filed in *Simmons* and *Adams*, asserting the challenges were untimely under section 170.6. Chevron's objections included a declaration by Attorney Correll stating he sent an e-mail to plaintiffs' counsel on November 28, 2012, and "[t]his email confirmed the assignment of this case to Judge Craddick." Chevron asserted plaintiffs "concede that the reassignment of this case to Judge Craddick was announced by the Court on November 27, 2012[,] . . . [and Chevron's] counsel advised Plaintiffs' counsel of this by e-mail on November 28, 2012." Chevron further asserted plaintiffs "then waited 43 days to file this challenge, 28 days longer than is the period permitted under the statute," and on that basis asked the court to deny the peremptory challenges as untimely. On February 26, 2013, the clerk of court sent notice by fax informing plaintiffs' their peremptory challenges were rejected as untimely.

## DISCUSSION

"An order granting or denying a peremptory challenge is not an appealable order and may be reviewed only by way of a petition for writ of mandate filed within 10 days of notice to the parties of the decision. [Citation.] The standard of review is abuse of discretion." (*Grant v. Superior Court* (2001) 90 Cal.App.4th 518, 523.)

" 'The Legislature has enacted detailed procedural statutory requirements regarding the time during which an affidavit to disqualify a judge may be filed. (§ 170 et seq.) Any superior court policy or practice that is in conflict with those statutory time provisions is void. [Citations.]' [Citations.] [¶] . . . [¶] As a general rule, section 170.6 permits challenge of a judge at any time before commencement of a trial or contested hearing, with three exceptions: (1) the 'all-purpose assignment' rule . . . ; (2) the 'master calendar' rule; and (3) the '10–day/5–day' rule." (*D.M. v. Superior Court* (2011) 196 Cal.App.4th 879, 886, fn. omitted.)

4

Here, the exception at issue is the all-purpose assignment rule. Generally, "two prerequisites" must be met before the "all-purpose assignment rule" exception applies under section 170.6: "First, the method of assigning cases must 'instantly pinpoint' the judge whom the parties can expect to ultimately preside at trial. Second, that same judge must be expected to process the case 'in its totality' [citation], from the time of the assignment . . . ." (*People v. Superior Court* (*Lavi*) (1993) 4 Cal.4th 1164, 1180, fns. omitted; accord, *Grant v. Superior Court, supra*, 90 Cal.App.4th at p. 524.)

Chevron contends the two prerequisites for an all purpose reassignment from Judge Goode to Judge Craddick were met in *Simmons* and *Adams* because (1) the November 28 e-mail distributed by counsel for Chevron "instantly pinpointed" Judge Craddick as the judge the parties could expect to preside at trial, and, (2) under the local rules judges are assigned for all purposes, therefore Judge Craddick could be expected to process the case in its totality.

What Chevron disregards is that the assignment or reassignment of cases is a matter for the court, not opposing counsel. The November 28 e-mail from counsel for Chevron advised that at the November 27 case management conference in the *Abercrombia* matter, Judge Goode announced he would "no longer handle the complex case docket as of January 2" and "[a]ll of his cases are being transferred to Judge Craddick." However, there is no transcript of the November 27 case management conference; moreover, the minute order for the November 27 case management conference in *Abercrombia* states "as of 1/2/13 *this case* is reassigned to Dept 9 as Judge Craddick will be the Complex Department judge at that time." (Italics added.) In short, the minute order specifically reassigns only the *Abercrombia* matter to Judge Craddick; it does not reassign either *Simmons* or *Adams* to Judge Craddick. Indeed, on November 27 the Adams plaintiffs received a notice of case management conference upon filing their complaint, informing them that the case had been assigned to Judge Goode for all purposes; and, as of November 27, the last communication the Simmons plaintiffs received from the court informed them the case management conference scheduled for December 12, 2012, had been continued to January 30, 2013, in

5

Department 17 before Judge Goode.  Because there is no evidence petitioners received any notice *from the court* in 2012 that their cases had been reassigned to Judge Craddick, the November 28 e-mail from Chevron's counsel did not trigger the 15-day period for filing a challenge under section 170.6.

Cybermedia, Inc. v. Superior Court* (1999) 72 Cal.App.4th 910 (*Cybermedia*), provides useful guidance.  In *Cybermedia,* the case initially was assigned for all purposes to Judge Baker, the individual calendar judge in department 31.  Subsequently, Judge Baker was replaced in department 31 by Judge Ashmann.  The public information office of the superior court mailed to Cybermedia's law firm "a general notice, including this change in judges, but with no indication of case names or full case numbers."  Later, counsel for Cybermedia appeared at a hearing on a demurrer and for the first time learned Judge Ashmann was now presiding in department 31.  Cybermedia promptly filed a peremptory challenge to Judge Ashmann, which the court rejected as untimely.  After receiving the court's ruling on his section 170.6 motion, counsel contacted his law firm's services clerk and learned the clerk had received the "general notice" from the court regarding the assignment of Judge Ashmann in place of Judge Baker.  However, the law firm services clerk did not forward a copy of the general notice to counsel because the notice "was addressed only to the law firm's clerk, who does not keep any record of which attorneys in the firm have cases assigned to the individual judicial departments."  Cybermedia sought a writ of mandate directing the superior court to set aside an order denying their section 170.6 motion on the grounds its counsel was not given notice of Judge Ashmann's assignment.  (*Cybermedia, supra,* 72 Cal.App.4th at pp. 912–913.)

The appellate court stated the issue before it was "whether the general notice mailed by the superior court's public information office was sufficient notice to petitioners so as to trigger the 15-day time period."  (*Cybermedia, supra,* 72 Cal.App.4th at p. 914.)  The court concluded the general notice did not trigger the applicable 15-day period to file a section 170.6 motion because, "It was not addressed to the attorney assigned to petitioner's case . . . .  It did not reference the case name and full case number, which might have enabled the employee of petitioner's attorneys sorting the

6

mail to route the general notice to the assigned attorney." (*Cybermedia*, at p. 914.) The court concluded Cybermedia's section 170.6 motion was timely because it was filed three days after petitioners received "actual notice of the assignment" when counsel appeared before Judge Ashmann. (*Cybermedia*, at p. 914.)

Under *Cybermedia*, therefore, a "notice" of reassignment for all purposes is sufficient to trigger the applicable 15-day period under section 170.6 to file a peremptory challenge only if the notice is a communication from the court, addressed directly to counsel of record or referencing the case name and number if addressed generally to counsel's law firm.[2] (See *Cybermedia, supra,* 72 Cal.App.4th at p. 914.) Here, petitioners received no written notice of reassignment of any sort from the court; however, petitioners received actual notice of reassignment from court staff when they contacted the court early in January 2013 about filing a pro hac vice motion, whereupon they timely filed their section 170.6 motions. Bearing in mind section 170.6 "guarantees a litigant 'an extraordinary right to disqualify a judge' " and that the section " 'should be liberally construed with a view to effect its objects and to promote justice' " (*Nissan Motor Corp. v. Superior Court* (1992) 6 Cal.App.4th 150, 154), this record cannot support a finding the November 28 e-mail sent by counsel for Chevron was sufficient notice of reassignment to trigger the applicable 15-day period to file a motion under section 170.6.

Chevron cites no case, and we have found none, where an appellate court upheld denial of a section 170.6 motion as untimely because the moving party received notice of an assignment or reassignment, not directly from the court or its staff, but purportedly conveyed orally by the court to opposing counsel and from opposing counsel to the moving party. Moreover, even at face value, the "second-hand notice" from Chevron's counsel could reasonably be read by plaintiffs as a courtesy, "for-your-information" type of advisement that a reassignment of the Simmons and Adams cases to Judge Craddick in

---

[2] We need not decide whether the verbal notice of reassignment communicated to plaintiffs' counsel by clerk staff over the telephone was sufficient notice under section 170.6, since plaintiffs thereafter filed section 170.6 challenges.

Department 9 was imminent, and could reasonably have expected to receive notification from the court of any such reassignment when it occurred.

In urging that petitioners should be charged with notice on November 28, 2012, Chevron asserts "our Supreme Court held that either actual or constructive knowledge— not a formalized notice from the court—is sufficient" notice under section 170.6, citing *Lavi, supra,* 4 Cal.4th at pages 1182–1185. *Lavi's* holding is not so sweeping. Rather, after noting "the conflict among lower courts as to whether an assignment to a department by number, rather to a judge by name, can be an assignment for all purposes[,]" the Court stated: "For the reasons discussed in part II.D. of this opinion, *post*, which concerns the application of the 10-day/5-day rule, we hold that when there is an assignment to a department by number, if a particular judge regularly presides in that department and that judge's identity is either known to the litigant *or discoverable on reasonable inquiry*, and if there is reasonable certainty that this judge will ultimately hear the case (i.e., evidence is produced indicating that the case will likely remain in the department to which it was initially assigned), then a court may properly invoke the all purpose assignment rule, assuming such an assignment is involved." (4 Cal.4th at p. 1180, fn. 12, italics added.) The other comment quoted by Chevron, placed in full context, is as follows (Chevron quote in italics); "Whether the master calendar rule can be fairly applied when there is an assignment to a department by number, rather than to a judge by name, is a fact-specific inquiry, but, *generally speaking, litigants may be charged with knowledge of which judges regularly preside in the various departments of the court system in which they are litigating*." (4 Cal.4th. at p. 1185.) The court's guidance regarding the all-purpose assignment rule and the master calendar rule where assignments are by department number, not to a particular judge, has no application to the case before us.

## DISPOSITION

We have previously notified the parties we might issue a peremptory writ in the first instance. (*Palma U.S. v. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177–180.) No useful purpose would be served by further briefing and oral argument.

8

Accordingly, let a peremptory writ of mandate issue commanding respondent Contra Costa County Superior Court, in its case Nos. MSC12-01841 and MSC12-02777, to vacate its orders rejecting petitioners' peremptory challenges under section 170.6 and to enter new orders granting said peremptory challenges.

The temporary stays imposed by this court in these matters shall dissolve upon issuance of the remitittur.  (See Cal. Rules of Court, rules 8.490(c), 8.272.)  Petitioners are awarded costs.  (Cal. Rules of Court, rule 8.493(a).)


_____

Banke, J.


We concur:


_____

Margulies, Acting P. J.


_____

Dondero, J.